# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2026

Lyle W. Cayce
Clerk

No. 25-20295

———————

Diana Loayza,

*Plaintiff—Appellant*,

*versus*

Whole Foods Market Rocky Mountain/Southwest, L.P.,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-2658

———————————————————————

Before King, Southwick, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Appellant Diana Loayza appeals the district court's grant of summary judgment for her former employer, Whole Foods Market Rocky Mountain/Southwest, L.P. ("Whole Foods"), on her Title VII pregnancy discrimination claim. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-20295

## I.    Background

Diana Loayza served as the Bakery Team Lead at Whole Foods's Woodlands, Texas location. Brandon Tupper, the Store Team Leader, eventually began serving as Loayza's direct supervisor. Loayza reported difficulties working with Tupper to Whole Foods's team member services.

In February 2021, Loayza learned she was pregnant. Whole Foods learned about her pregnancy shortly after when she had to call out of work for a week at the instruction of a doctor. Loayza was approved for intermittent leave under the Family and Medical Leave Act. On one instance, Loayza informed Tupper that she would be leaving work early due to pregnancy-related illness, and Tupper stated that he may assign her attendance points, which Loayza characterizes as "disciplinary points." Loayza also informed Tupper that she intended to take a maternity leave of at least four months. Tupper expressed concern about the length of this leave and compared it to another employee's shorter maternity leave. Soon thereafter, Tupper hired Allegra Aviles as Assistant Bakery Team Leader and instructed Loayza to train her in the weeks before her leave.

In August 2021, Loayza asked Assistant Store Team Leader Michelle Sellars for permission to buy baked goods for her baby shower at cost price—the price Whole Foods pays to vendors—rather than retail price. Sellars gave approval. The parties agree that Loayza placed her order on August 20. On August 31, Sellars resigned. Loayza went to the store and paid for the order on September 3. Loayza directed a subordinate to ring up the items using a one-dollar "special deco[ration] fee" per item, as she admitted in a later investigation. The subordinate produced a label that Loayza then took to a cashier to check out, where she additionally applied her 25% team member discount. In the end, Loayza paid $158.25, rather than the cost price of $311.41 or retail price of approximately $514.44.

2

No. 25-20295

The subordinate who prepared the label reported the transaction, and Whole Foods launched an investigation. Whole Foods determined Loayza had committed a "Major Infraction," which is grounds for discharge, due to "[i]ntentional ringing up of incorrect prices . . . and/or intentional incorrect labeling of prices." Loayza was terminated on September 25, 2021. Aviles replaced her as Bakery Team Lead in February 2022.

Loayza filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that she faced pregnancy discrimination by Tupper. She received notice of her right to sue and filed suit against Whole Foods under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"). Whole Foods moved for summary judgment, which Loayza opposed, and the district court granted the motion. Loayza timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had federal question jurisdiction over this case under 28 U.S.C. § 1331 because Loayza brought a claim arising under Title VII. The district court entered a final judgment, and we accordingly have jurisdiction over this appeal under 28 U.S.C. § 1291.

We review "a district court's grant of summary judgment de novo." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (citation omitted). "Summary judgment is proper where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We review the evidence in the light most favorable to Loayza, as the nonmoving party, and draw all reasonable inferences in her favor. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328–29 (5th Cir. 2017) (per curiam) (citation omitted). We "may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (citation modified).

3

No. 25-20295

### III.    Discussion

Loayza brings her claim under the Pregnancy Discrimination Act ("PDA"), which amended Title VII. "A claim brought under the PDA is analyzed like any other Title VII discrimination claim." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Title VII discrimination can be established through either direct or circumstantial evidence. [Loayza]'s case is built on the latter, which means that it is analyzed under the familiar *McDonnell Douglas* framework."[1] *Id.* (citation omitted). Loayza invites us to "set aside the *McDonnell Douglas* standard" in order to "purg[e] atextual judge-made doctrines from Title VII cases." The Supreme Court has not reversed *McDonnell Douglas*, so we must continue to follow it.

Under the *McDonnell Douglas* framework, "a plaintiff must first set forth a prima facie case of discrimination." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016). As we have explained:

> To establish a prima facie case . . . an employee must demonstrate that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Id.* (citation modified). "If the plaintiff makes this showing, a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citation modified). Then, "if the employer carries this burden, the inference of discrimination disappears and the plaintiff must present

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

evidence that the employer's proffered reason was mere pretext." *Id.* (citation modified).

Whole Foods contends that Loayza failed to establish a prima facie case. At summary judgment, the district court "assume[d] without deciding that [Loayza] c[ould] establish a prima facie case of discrimination" and decided on the grounds of pretext. Loayza contends that "[t]he prima facie case is thus not at issue in this appeal."

We assume arguendo that Loayza did set forth a prima facie discrimination case and turn to the district court's analysis of pretext, for which it found that Loayza failed to satisfy her burden of establishing that Whole Foods's reasons for terminating her were pretextual.[2] The question before us here is "not whether [Loayza] proves pretext, but rather whether [she] raises a genuine issue of fact regarding pretext." *Caldwell*, 850 F.3d at 242 (citation omitted). While Loayza raises several arguments regarding this issue on appeal, and we interpret the record in the light most favorable to Loayza and draw all reasonable inferences in her favor, *see Austin*, 864 F.3d at 328–29 (citation omitted), we conclude that the district court correctly determined that Loayza failed to raise a genuine issue of material fact on pretext, *see Caldwell*, 850 F.3d at 242 (citation omitted).

---

[2] We agree with the district court that Whole Foods articulated legitimate, nondiscriminatory reasons for terminating Loayza—i.e., her violation of its "Theft, Team Member Purchases, and Team Member Discount policies." *See generally Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 256 (5th Cir. 2020) (per curiam) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006), for the proposition that "[v]iolating a company policy is a legitimate, non-discriminatory rationale for terminating an employee"). Although *Eaglin* is "not controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

No. 25-20295

While the parties dispute various aspects of the purchase at the heart of this matter (e.g., whether Loayza properly received permission to purchase the items at the cost price, or the extent to which her subordinate determined the price she paid for the baked goods), it is undisputed that Loayza purchased the baked goods for approximately $158. As the district court noted, it is also undisputed that Loayza directed her subordinate to apply the one-dollar special decoration fee for her purchase. The price Loayza paid, in turn, was below both the retail price of approximately $514.44 and the cost price of $311.41. Even if Sellars did validly authorize Loayza to pay cost price for these baked goods, Loayza exceeded any such authorization by directing the application of the special decoration fee, also applying her employee discount, and ultimately paying *below* cost price.[3]

Further, while Loayza avers that Tupper pressed her to rewrite part of a statement she submitted regarding the disputed purchase, she later submitted a *second* written statement, which she characterized as her "actual statement." In this second statement, she emphasized that she had "requested permission" for the purchase but admitted that she had eventually "understood that [she] made a mistake because [Tupper] pointed [out] that [it] was difficult to track the purchase and everything [went] to [her] unknown shrink."[4]

---

[3] In a deposition, Loayza was asked several questions about the economics of an employee buying Whole Foods items. In response to a question about whether an employee paying "at cost" "for [an] item . . . means the store is not making any money on that item," she answered, "[w]ith your example, yes." She also answered "[y]es" when asked about how, if an employee were to "go purchase [such an the item] and . . . use a 25 percent discount," that would mean "the store would actually lose money on that transaction."

[4] Loayza also admitted that she was not "aware of any policies or procedures about an employee purchasing an item at cost," nor had she "ever heard of anybody at that Woodlands store doing . . . that."

No. 25-20295

Indeed, as the district court noted, Whole Foods cited Loayza's violations of its "Theft, Team Member Purchases, and Team Member Discount policies" to justify her dismissal. While Loayza submits that Whole Foods failed to properly document why it opted to terminate her instead of "issu[ing] a final warning," we note that Whole Foods's "Theft" policy states (with emphasis added) that "Team Members who engage in any" of a list of prohibited "conduct *will* be subject to discharge."[5] We agree with the district court that Whole Foods "conducted a complete investigation of [Loayza's] bakery purchase," including "procuring written statements from" Loayza's subordinate, "a team member witness, and [Loayza] recalling their account of events," as well as a "meeting with" Loayza "conducted" by Whole Foods's "human resources personnel," and the investigation's finding (i.e., that Loayza violated the abovementioned policies) informed her termination. Thus, in sum, we conclude that summary judgment was appropriate on this ground.[6] *Cf. Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a

---

[5] This list includes, but is not limited to, "[i]ntentional ringing up of incorrect prices . . . and/or intentional incorrect labeling of prices," which Whole Foods cited in its "Team Member Separation Form" for Loayza.

[6] We separately note Loayza's argument that "[t]he district court additionally erred in failing to analyze [her] claims under a mixed-motive analysis." However, as we have explained, "if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). A litigant must sufficiently "raise[]" her argument to the "degree that the district court has an opportunity to rule on it," otherwise "we will not address it on appeal." *Id.* On appeal, Loayza points to several passing mentions of a mixed-motive theory of liability in her response to Whole Foods's motion for summary judgment, but we agree with Whole Foods that these do not satisfy the requirement. Therefore, we do not address Loayza's arguments on this point.

racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones.").

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.